IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-02921-DDD-CYC

NICHOLAS RIGATO,

Plaintiff,

v.

ALLYSSA CAMEY,
BRITTANY FARRIS-HERNANDEZ,
CAROL RIGATO,
DANNIS,
MATT HANSEN,
JASMINE LEECHMAN,
MOLDANODO,
TESSA HOLLAND,
LITTLE,
HOLMAN,
MALEBRANCH,
LYNN CAPPALUCCI,
JOHNSON,
NICOLE BARAZZA-SANCHEZ,
OWENS,
CASTENEDA,
ALMERBED,
ROTOLO,
REIL,
NADIA SANTISTEBAN,
MORGAN,
MITCH,
WOLD,
SAM LAMBERT,
MORALES,
REBECCA SCHRIVENER,
STICKLE,
CLEMMONS,
MANN,

Defendants.

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Cyrus Y. Chung, United States Magistrate Judge.**

Defendants Maleni Maldonaldo-Velez, Yadirel Morales-Cuevas, Chei Dannis, Jean Luc Malbranch, Gregory Clemmons, Timothy Morgan, Rebekah Scrivener, Tyler Hollman, Vincent Rotolo, Kala Wold, Eva Little, Matt Hansen, and Gerald Owen,[1] all of whom are employees of the Colorado Department of Corrections ("CDOC"), move to dismiss plaintiff Nicholas Rigato's claims against them. Federal Rule of Civil Procedure 8, they say, requires a short and plain statement of the claim, and the plaintiff's amended complaint is neither short nor plain. At sixty-six pages, the complaint is lengthy. Beyond the thirteen defendants who have moved to dismiss, it asserts claims against over a dozen more not addressed in this Recommendation. The defendants' invocation of Rule 8 is therefore understandable. But the rule's purpose is to enable a defendant to respond, and despite the complaint's unhelpful length, there is enough organization and factual detail to give most of the defendants sufficient notice to respond intelligently.

Indeed, the defendants have parsed the complaint, arguing that it fails to state a claim. It often does fail, attempting to stitch together a sprawling conspiracy across multiple prison facilities with threads of conclusions and guesswork. But some of his failure-to-protect claims contain enough factual content to move forward. Accordingly, the Court **RECOMMENDS** that the motion to dismiss, ECF No. 55, be **GRANTED in part and DENIED in part**.

## BACKGROUND

According to the Amended Complaint, whose factual allegations the Court accepts as true for this motion, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), the plaintiff was a CDOC inmate

[1] The amended complaint often misspells the defendants' names or uses only their last names.

between October 2022 and June 2025, during which the defendants mistreated him. ECF No. 24. He alleges that this behavior, including obstruction of legal mail, retaliation, and inciting violence by other inmates, continued throughout his transfers to several facilities. *Id.* at 13.

He groups his allegations under the rubric of a single claim invoking various constitutional provisions and a wide-ranging conspiracy involving nearly thirty defendants. *Id.* at 11. An examination of the allegations against the defendants who bring the current motion reveals that they can be separated into five categories:

(1) Wold and Dannis confiscated a state court petition for habeas corpus the plaintiff placed in the prison legal mail;

(2) Little, Hollman, Owen, Malbranch, Rotolo, Morgan, and Clemmons retaliated against him for filing grievances and lawsuits;

(3) Little, Hollman, Owen, Maldonado-Velez, Morales-Cuevas, Scrivener, and Rotolo incited or failed to protect him against inmate violence;

(4) Malbranch and Morgan delayed his consideration for parole; and

(5) All defendants engaged in a sprawling conspiracy against the plaintiff.

*See id.* at 12–64.

The plaintiff commenced this action pro se on October 21, 2024. ECF No. 1. A magistrate judge reviewed his complaint and ordered changes, including that the complaint not exceed seventy pages. *See* ECF No. 13; 28 U.S.C. § 1915A(a). The plaintiff filed an amended complaint on June 12, 2025. ECF No. 24. Most of the defendants who now move to dismiss waved service, *see* ECF No. 31, and they moved to dismiss the amended complaint. ECF No. 55. After that, service was effected upon Hansen, ECF No. 57, who joined the motion, ECF No. 62. After some confusion about the identity of the "Owens" named in the complaint, *see* ECF Nos. 90, 102,

Owen waived service and joined the motion as well. ECF Nos. 90, 100. The district judge referred the motion to the undersigned, ECF No. 56, and the Court addresses each of the five groups of allegations identified above in turn, reserving a recitation of factual details for the specific analysis of the claim.

## ANALYSIS

There is a threshold issue. Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 677–78. This gives a defendant sufficient notice to frame responsive pleadings and prepare for trial. *See Riblet Tramway Co. v. Monte Verde Corp.*, 453 F.2d 313, 318–19 (10th Cir. 1972). The defendants contend that the amended complaint is so lengthy and disorganized that it cannot fulfill that duty. ECF No. 55 at 5–7.

The complaint is lengthy at over sixty pages. But some of that length is due to the breadth of what is alleged, although the complaint is, at times, unnecessarily laden with legal conclusions that add little to it. In all events, "verbosity or length is not by itself a basis for dismissing a complaint." *Pittman v. King*, No. 20-cv-03371-RMR-NRN, 2023 WL 6464934, at *3 (D. Colo. Oct. 4, 2023) (quoting *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011)). And the complaint is not wholly without organization: the plaintiff roughly groups incidents by the facility at which they occurred, such that some chronology is apparent. "A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers," though a court is not "to assume the role of advocate for the pro se litigant." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Under such a standard, the amended complaint is not so disorganized as to defy comprehension. Indeed, the defendants were able to divine enough from the complaint to organize their motion to dismiss along the five categories enumerated above. *See* ECF No. 55 at 7–20. And while the complaint's

omnibus constitutional claim, ECF No. 24 at 11, leaves something to be desired, a court must attempt to "reasonably read the pleadings to state a valid claim on which the plaintiff could prevail . . . despite the plaintiff's failure to cite proper legal authority" or "his confusion of various legal theories." *Hall*, 935 F.2d at 1110. Rule 8, then, cannot ground dismissal here.

The one exception to that is the plaintiff's claim against Hansen. The only allegation against him in the amended complaint is that he "authorized . . . actions" of a co-defendant "at some point in time while he was director of prisons." ECF No. 24 at 42. Without specificity of when, how, or what Hansen authorized or how it gives rise to liability, Hansen does not have fair notice of the claim against him, and Rule 8 is not satisfied with respect to him.

The remaining defendants turn to Rule 12(b)(6), which permits a party to move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the complaint must contain sufficient factual matter, taken as true and viewed in the light most favorable to the plaintiff, to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 663. The plaintiff cites the "no set of facts" standard of *Conley v. Gibson*, 355 U.S. 41 (1957), *see* ECF No. 71 ¶ 17, but the Supreme Court has explained that "this famous observation has earned its retirement." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007). The plausibility standard now governs and, under it, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 663. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Instead, a court looks to whether "the plaintiff" has "plead[ed] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## I. Denial of Access to the Courts

The plaintiff alleges that Wold and Dannis failed to mail a habeas petition to state court on October 30, 2023 and caused a delay in his petition. ECF No. 24 at 36. This appears to assert a claim for unconstitutional denial of access to the courts.

Inmates have a constitutional right to meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817, 823 (1977), *overruled in part on other grounds by Lewis v. Casey*, 518 U.S. 343, 354 (1996). The source of that right is not entirely clear; the Supreme Court has "grounded the right of access to courts in the Article IV Privileges and Immunities Clause, the First Amendment Petition Clause, the Fifth Amendment Due Process Clause, and the Fourteenth Amendment Equal Protection and Due Process Clauses." *Christopher v. Harbury*, 536 U.S. 403, 415 n.12 (2002) (citations omitted). Regardless, to raise a claim of denial of access to the courts, a prisoner must demonstrate actual injury giving him standing for the claim. *Lewis*, 518 U.S. at 350–51; *see Trujillo v. Williams*, 465 F.3d 1210, 1226 (10th Cir. 2006); *Peterson v. Shanks*, 149 F.3d 1140, 1145 (10th Cir. 1998); *Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990). That is, he must show that he was unable to meet a filing deadline or present a claim, which resulted in an adverse ruling or other impediment. *Lewis*, 518 U.S. at 350, 353.

As a threshold matter, it is doubtful that the plaintiff's allegations plausibly state a claim for relief. His complaint lacks specific allegations about how Wold or Dannis interfered with his legal mail; instead, it alleges that they were mail-room staff and surmises that they must have deliberately refused to mail the habeas petition because it did not arrive in a timely fashion. But mail can go missing for many reasons, *see, e.g.*, *U.S. Postal Serv. v. Konan*, 607 U.S. 391, 395–97 (2026), and speculating that Wold and Dannis caused the mail delay likely does not rise to the level of plausibility. *See Iqbal*, 566 U.S. at 678.

It is unnecessary, however, to rule only on that basis. Although the plaintiff attributes his habeas petition's dismissal to tardiness caused by Wold and Dannis, the state court order dismissing the plaintiff's habeas petition, ECF No. 55-2, of which the Court may take judicial notice, *see Haney v. Fed. Nat'l Mortg. Ass'n*, No. 16-cv-01296-PAB, 2016 WL 8737866, at *1 (D. Colo. June 2, 2016), makes clear that it denied the petition for failing to show good cause, follow a state rule, address any writ of mandamus relief, or demonstrate a prima facie case, not for timing issues. ECF No. 55-2 at 1. Without actual injury, the plaintiff's claim against Wold and Dannis cannot proceed. It must therefore be dismissed.

**II. First Amendment: Retaliation**

The plaintiff next alleges that Little, Hollman, Owen, Malbranch, Rotolo, Morgan, and Clemmons retaliated against him for exercising his First Amendment rights.

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. "[A]ny form of official retaliation for exercising one's freedom of speech, including prosecution, threatened prosecution, bad faith investigation, and legal harassment, constitutes an infringement of that freedom" and, thus, a plaintiff may assert a claim for retaliation under the First Amendment. *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000) (quoting *Lackey v. Cnty. of Bernalillo*, No. 97-2265, 1999 WL 2461, at *3 (10th Cir. Jan. 5, 1999)). To state such a claim, a plaintiff must plausibly allege that: "(1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007); *Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010). "[A]n inmate is not inoculated from the normal conditions of confinement experienced by

convicted felons serving time in prison merely because he has engaged in protected activity." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998). Accordingly, the plaintiff must show "specific facts showing retaliation because of the exercise of the prisoner's constitutional rights," *id.* (quotation marks omitted), including facts demonstrating that the defendant's "alleged retaliatory motives were the 'but for' cause of" his actions. *Id.*

The Court addresses the plaintiff's retaliation claim against each defendant in turn.

Little, the plaintiff says, branded him a "snitch" and offered another inmate a reduced sentence to attack the plaintiff on November 14, 2024, while he was at Four Mile Correctional Center ("FMCC"). ECF No. 24 at 16. He attributes the motivation for her actions to several grievances he filed against her. *Id.* at 18. But to state a viable retaliation claim for filing grievances, a plaintiff must allege, among other things, "that Defendant was aware of his attempt to file grievances;" and "that as a result of that awareness, Defendant took action to impose an adverse consequence on him." *Farrell v. Schwartz*, No. 14-CV-02903-MSK-CBS, 2015 WL 13730689, at *4 (D. Colo. Dec. 16, 2015), *recommendation adopted,* 2016 WL 1156754 (D. Colo. Mar. 23, 2016) (citing *Williams v. Klien*, 20 F. Supp. 3d 1171, 1175 (D. Colo. 2014). Here, the plaintiff never alleges that Little knew of any of grievances he filed against her. As a result, he also fails to provide a link between Little's action being the result of him engaging in that activity. *Id.*; *Shero*, 510 F.3d at 1203. The claim is therefore insufficiently pled.

The plaintiff next asserts that Malbranch retaliated against him by transferring him in December 2023 from FMCC to another facility. ECF No. 24 at 19. As with Little, this claim fails to allege that Malbranch was aware of any grievances filed or that Malbranch took adverse action against him because he filed such grievances. *Farrell*, 2015 WL 13730689, at *4. It must also be dismissed.

While at Buena Vista Correctional Complex ("BVCC"), the plaintiff alleges that Morgan, his case manager, "possibl[y]" retaliated against him by informing the Parole Board that he was not available for a Parole Application Review. ECF No. 24 at 25–26. Again, this claim does not allege that Morgan was aware of any grievances filed or that Morgan took adverse action against him because he filed such grievances. *Farrell*, 2015 WL 13730689, at *4. Indeed, the plaintiff concedes that retaliation is a mere possibility, ECF No. 24 at 26, but a plaintiff's allegations must "nudge[] their claims across the line from conceivable to plausible" to survive a motion to dismiss. *Robbins v. Okla. ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008).

The plaintiff's First Amendment retaliation claims against Hollman and Owen fare no better. He says that Hollman failed to protect him after an offender notified Hollman of Little telling them of the plaintiff being a "snitch." ECF No. 24 at 17. He asserts that Owen was put on notice of another inmate's intention to harm him and did nothing. *Id.* at 17–18. Although the plaintiff concludes summarily that these actions were retaliatory — allegations that must be disregarded, *Iqbal*, 556 U.S. at 663 — he again alleges no awareness by either defendant of any protected activity in which he engaged. His claim is therefore insufficient. *See Farrell*, 2015 WL 13730689, at *4.

Maldonado-Velez, Morales-Cuevas, Scrivener, Rotolo, and Clemmons also move to dismiss any retaliation claims, but the Court cannot decipher any facts indicating that the plaintiff intended to bring such a claim against them. To the extent that the plaintiff intended to do so, the Court recommends that the claim be dismissed against these defendants for a failure to allege the constitutionally protected activity grounding the claim. *See Shero*, 510 F.3d at 1203.

For these reasons, the Court recommends that the First Amendment retaliation claim against the defendants be dismissed.

## III. Eighth Amendment: Failure to Protect

The plaintiff next alleges that Little, Hollman, Owen, Maldonado-Velez, Morales-Cuevas, Scrivener, and Rotolo failed to protect him. The motion to dismiss also mentions Clemmons, ECF No. 55 at 13, but the only allegations against Clemmons have to do with interrupting the plaintiff during a medical appointment. ECF No. 24 at 45. Even liberally construed, it is difficult to see how this relates to the Eighth Amendment.

That amendment prohibits "cruel and unusual punishments." U.S. Const., amend VIII. It "imposes duties on" prison "officials," including "a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994). "[T]o establish a cognizable Eighth Amendment claim for failure to protect, a plaintiff 'must show that he is incarcerated under conditions posing a substantial risk of serious harm,' the objective component, and that the prison official was deliberately indifferent to his safety, the subjective component." *Benefield v. McDowall*, 241 F.3d 1267, 1271 (10th Cir. 2001) (quoting *Farmer*, 511 U.S. at 834). The subjective component requires that "a prison official must have a 'sufficiently culpable state of mind.'" *Farmer*, 511 U.S. at 847 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297–98 (1991)). That is, "before liability can be imposed, a prison official 'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Verdecia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003) (quoting *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998)).

As noted above, the complaint alleges that Little labeled the plaintiff a snitch and offered an inmate a reduced sentence as an incentive to attack him. ECF No. 24 at 16. "[L]abeling an inmate a snitch satisfies the *Farmer* standard, and constitutes deliberate indifference to the safety of that inmate." *Benefield*, 241 F.3d at 1271. That counsels against dismissal. Little resists this conclusion, noting that the plaintiff does not allege an assault stemming from her conduct. ECF

No. 55 at 14. But this does not move the needle in her favor. It may be true that "the disclosure had not yet led to an attack on the plaintiff, but that d[oes] not render the pleadings deficient on the objective component of the Eighth Amendment claim." *Brown v. Narvais*, 265 F. App'x 734, 736 (10th Cir. 2008) (citing *Benefield*, 241 F.3d at 1272). The absence of an attack does raise "questions as to the appropriate available remedy, but [does] not affect the legal sufficiency of the constitutional claim pled, as 'a violation of the Eighth Amendment does not turn on the type [of] relief sought.'" *Id.* As such, the plaintiff states an Eighth Amendment claim against Little.

Likewise, the plaintiff's Eighth Amendment claim against Maldonado-Velez, Morales-Cuevas, and Scrivener rests on allegations that they labeled him a "rat" and a snitch daily from March to June 2023 and shared information about him with other inmates, ultimately resulting in him being assaulted. ECF No. 24 at 20. For the same reasons that he states a claim against Little, he does against these defendants as well. The defendants' citation of *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997), *see* ECF No. 55 at 15, does not change the calculus: that case reversed summary-judgment grants to guards and a warden on excessive-force and deliberate-indifference claims.

On the same day that Little labeled the plaintiff a snitch, the plaintiff says that Hollman and Owen each heard threats from inmates against him and took no action. ECF No. 24 at 17–18. He does not allege that any harm came to him as a result. That he was subjected to the mere possibility of assault from another inmate does not satisfy the objective component of an Eighth Amendment violation. *See Williams v. Daniels*, No. 14-CV-00705-CBS, 2014 WL 5152359, at *3 (D. Colo. Oct. 14, 2014) (collecting cases). That is, "'[t]he mere existence of [ ] threats, without any allegation that physical harm actually existed or was imminent,' is insufficient to plausibly allege that a plaintiff faced a substantial risk of serious harm under the Eighth Amendment."

*Booker v. Sefman*, No. 22 CIV. 2355 (NSR), 2024 WL 3521779, at *2 (S.D.N.Y. July 23, 2024) (quoting *Green v. City of N.Y. Dep't of Corr.*, No. 06 Civ. 4978 (LTS)(KNF), 2008 WL 2485402, at *1 (S.D.N.Y. June 19, 2008)). Instead, prison officials are liable when "they knowingly disregarded an obvious threat to such an extent that one can only assume the officials intended the threat to be carried out," *Johnson v. Maynard*, No. CIV.A. ELH-12-2692, 2013 WL 4176958, at *6 (D. Md. Aug. 12, 2013), such as when the inmate threat is "accompanied by indications that the threat will be carried out." *Booker*, 2024 WL 3521779, at *2 (citation modified). The plaintiff alleges no such indications and, as such, his claim against Hollman and Owen fails.

The plaintiff brings a failure-to-protect claim against Rotolo, who he alleges stood idly by while the plaintiff was threatened and then punched in the face, but Rotolo raises no arguments to dismiss the claim. As such, this claim against Rotolo moves forward. *See, e.g.*, *Peoples v. Colo. Dep't of Corr.*, No. 24-CV-02016-CNS-KAS, 2025 WL 2430014, at *2, 8 (D. Colo. Aug. 22, 2025) (noting that defendants' motion to dismiss did not address certain claims and, as such, those claims should move forward).

## IV. Fourteenth Amendment: Due Process and Equal Protection

The plaintiff brings a due process and equal protection claim against the defendants. He invokes both the Fifth and the Fourteenth Amendment, but the Fifth Amendment applies only to action by the federal government. *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002); *Ward v. Anderson*, 494 F.3d 929, 932 n.3 (10th Cir. 2007). Only state officials are sued here. The claim therefore arises under the Fourteenth Amendment.

Except for Malbranch and Morgan, though, the plaintiff identifies no particular defendants against whom he brings these claims. ECF No. 24. "Personal participation is an essential allegation in a § 1983 claim." *Montoya v. City & Cnty. of Denver*, No. 21-1107, 2022 WL 1837828 (10th Cir. June 3, 2022) (quoting *Bennett v. Passic*, 545 F.2d 1260, 1262–63 (10th

Cir. 1976)). Without personal participation alleged against additional defendants, this claim fails against those defendants for failure to provide a link between them and his claim. *See Arriaga v. Roberts*, 803 F. App'x 222, 223 (10th Cir. 2020). As for Malbranch and Morgan, the plaintiff says they "frequently informed the Parole Board" that he was unavailable to attend his parole hearing. ECF No. 24 at 26, 33, 35. That does not state a due-process claim.

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). A liberty interest may arise from the Constitution, or it may arise from an expectation or interest created by state laws or policies. *Id.* But the Constitution does not afford prisoners a right to be released on parole before the expiration of a valid sentence. *See Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Absent a state-created liberty interest, "there simply is no constitutional guarantee that [determinations of parole eligibility] must comply with standards that assure error-free determinations." *Id.*

There is no such interest here. "Colorado state prisoners lack a liberty interest in parole because parole is discretionary under state law." *Medina v. Murphy*, No. 23-CV-02241-LTB-SBP, 2023 WL 9419532, at *3 (D. Colo. Dec. 11, 2023) (citing *Fetzer v. Raemisch*, 803 F. App'x 181, 184 (10th Cir. 2020)), *recommendation adopted,* 2024 WL 301956 (D. Colo. Jan. 10, 2024). And while the plaintiff focuses on the delay in his parole hearing, rather than a more general right to parole, ECF No. 24 at 26, this also does not invoke a liberty interest. *See, e.g.*, *Boutwell v. Keating*, 399 F.3d 1203, 1215 & n.3 (10th Cir. 2005) (dismissing arguments "concerning the sufficiency of the process" of paroling a prisoner because there was no "liberty interest of which

he has been deprived); *Blea v. Colo. Bd. of Parole*, 779 P.2d 1353, 1356 (Colo. 1989) (teaching that delay by parole board does not constitute a due-process violation absent prejudice).

The plaintiff next asserts an equal protection claim against the defendants. The Fourteenth Amendment provides that "[n]o State shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Where, as here, an equal protection claim is not based on a suspect classification or membership in a protected class, a plaintiff must allege: "(1) that Defendants acted with discriminatory intent; (2) Plaintiff is similarly situated to other inmates who were treated differently, and (3) the difference in treatment bears no rational relationship to legitimate penological objectives of the prison." *Owen v. Medina*, No. 12-cv-00094-RM-CBS, 2013 WL 10445705, at *5 (D. Colo. Dec. 31, 2013) (citing *Templeman v. Gunter*, 16 F.3d 367, 371 (10th Cir. 1994)), *recommendation adopted*, 2015 WL 1524766 (D. Colo. Mar. 31, 2015).

The plaintiff does not. The amended complaint makes no allegation that the defendants acted with discriminatory intent or that they treated him differently from any other similarly-situated offender. Indeed, the plaintiff's response to the motion disavows similarity to other inmates. *See* ECF No. 71 ¶ 22. Therefore, the plaintiff fails to allege a Fourteenth Amendment equal protection claim against the defendants, and this claim should be dismissed. *Brown*, 662 F.3d at 1173 ("The pleading requirement of an allegation that a similarly situated person was treated differently applies both when the plaintiff challenges a government action that discriminates based on membership in a non-protected class or membership in a 'class of one.'").

## V. Civil Conspiracy

That leaves the plaintiff's last claim, civil conspiracy against all defendants.

"A civil conspiracy is the combination of two or more persons acting in concert, either to commit an unlawful act, or to commit a lawful act by unlawful means." *Singer v. Wadman*, 745

F.2d 606, 609 (10th Cir. 1984). It requires a "meeting of the minds or agreement among the defendants and concerted action." *Hinsdale v. City of Liberal*, 19 F. App'x 749, 770 (10th Cir. 2001). The plaintiff's complaint falls short of that. He concedes, for example, that "each defendant may not have known of each defendants['] role at any point." ECF No. 24 at 12. More importantly, his allegations of conspiracy rely entirely on conclusions. He says, for example, that Owen demonstrated a "conspiracy agenda" when he purportedly failed to protect him. *Id.* at 18. This allegation is conclusory and not sufficient to state a claim. *Sperry v. Corizon Health, Inc.*, No. 21-3008, 2022 WL 538120, at *5 (10th Cir. Feb. 23, 2022) (citing *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998)). Other conspiracy allegations are of the same ilk.

The plaintiff protests. It is true, as he says, ECF No. 71 ¶ 31, that "[i]t is not necessary that each member of the conspiracy commit an unlawful act in furtherance of the conspiracy to be liable." *Ass'n of Flight Attendants, AFL-CIO v. Skywest Airlines Inc.*, No. 2:23-CV-00723-DBB-DBP, 2025 WL 3537390, at *11 (D. Utah Dec. 9, 2025). But a claim of conspiracy still requires factual, nonconclusory allegations showing a "meeting of the minds or agreement among the defendants and concerted action." *Hinsdale*, 19 F. App'x at 770. The complaint does not have them. It must therefore be dismissed.

## CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS**[2] that the defendants' Motion to Dismiss, ECF No. 55, be **DENIED in part** with respect to the plaintiff's Eighth Amendment

[2] Be advised that all parties shall have fourteen days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive, or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676–83 (1980); 28 U.S.C. §

claim for a failure to protect against defendants Maldonaldo-Velez, Morales-Cuevas, Scrivener, Rotolo, and Little. The Court **RECOMMENDS** that the motion be **GRANTED** with respect to all other claims against all defendants that bring this motion, dismissing those claims without prejudice.

The stay in this case is not lifted by this recommendation, as there are still outstanding motions to dismiss to which the plaintiff has not responded.

Respectfully submitted this 28th day of August, 2025, at Denver, Colorado.

BY THE COURT:



Cyrus Y. Chung
United States Magistrate Judge

636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen days after being served with a copy may bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted or adopted by the District Court. *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)). Finally, all parties must consult and comply with the District Judge's practice standards for any specific requirements concerning the filing and briefing of objections.